UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JEFFREY C. PFEIFFER,**

      **Plaintiff,**

v.                                                                                            Civil Action No.   3:21-cv-127

**RELTCO, INC.,**
Serve: Cogency Global, Inc.
       250 Browns Hill Ct.
       Midlothian, VA  23114-9510


**UNITED WHOLESALE MORTGAGE, LLC,**
Serve: C T Corporation System
       4701 Cox Road, Suite 285
       Glen Allen, VA  23060-6808

And

**FILO MORTGAGE, LLC,**
Serve: Blumbergexcelsior Corporate Services, Inc.
       7288 Hanover Green Drive
       Mechanicsville, VA  23111-1709

      **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, JEFFREY C. PFEIFFER, by and through his undersigned counsel, and for his Complaint against Defendant, RELTCO, INC. ("Reltco"), UNITED WHOLESALE MORTGAGE, LLC ("UWM") and FILO MORTGAGE, LLC ("Filo") states as follows:

### INTRODUCTION

1. Defendant Reltco, Inc. ("Reltco") improperly closed Plaintiff's refinancing of the loan secured by his residence, including by not informing Plaintiff of serious errors in the closing documents, by not applying his new loan proceeds to pay off his existing loan, and by engaging in

an improper acceptance of fees and other value in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 et seq. Filo Mortgage, LLC ("Filo Mortgage") was the mortgage broker who arranged the loan, who knew of the serious errors in the closing documents, who knew that the loan proceeds were not actually disbursed, and who failed to alert Plaintiff. As a result, Plaintiff's original home loan was not paid off when it should have been, and Plaintiff was forced to spend a tremendous amount of time attempting to remedy the problem created by Defendants. United Wholesale Mortgage, LCC ("UWM") was the lender who was responsible to ensure that Plaintiff was provided initial estimated disclosures within three days of his application, and these were never provided. Plaintiff brings claims under federal statutes and under the laws of the Commonwealth of Virginia.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 12 U.S.C. § 2614, and 15 U.S.C. § 1681p. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they arise out of the same set of facts as the federal claims and are so related to the federal claims as to form part of the same case or controversy.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (g) because the actions occurred within the boundaries of this Division of the Eastern District of Virginia.

## PARTIES

4. Plaintiff Jeffrey C. Pfeiffer is an individual who resides in Richmond, Virginia.

5. Defendant Reltco is foreign corporation authorized to do business in Virginia, and is licensed as a settlement company in Virginia. It closes numerous loans which are "federally related mortgage loan[s]" as defined in 12 U.S.C. § 2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and

in that they are made by "creditors" who make or invest in residential real estate loans aggregating more than $1,000,000 per year. Plaintiff's loan by which he refinanced his existing home loan is one such loan, and Reltco closed Plaintiff's loan.

6. Defendant Filo Mortgage is a corporation authorized to do business in the Commonwealth of Virginia and is licensed as a mortgage broker. It arranges numerous loans which are "federally related mortgage loan[s]" as defined in 12 U.S.C. § 2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" who make or invest in residential real estate loans aggregating more than $1,000,000 per year. Plaintiff's loan by which he refinanced his existing home loan is one such loan, and Filo Mortgage arranged the refinancing of Plaintiff's home loan.

7. Defendant UWM is a foreign corporation authorized to do business in the Commonwealth of Virginia. It funds numerous loans which are "federally related mortgage loan[s]" as defined in 12 U.S.C. § 2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" who make or invest in residential real estate loans aggregating more than $1,000,000 per year. Plaintiff's loan by which he refinanced his existing home loan is one such loan, and UWM was the lender in the refinancing arranged by Filo Mortgage.

## FACTS

8. In 2020, Plaintiff worked with Filo Mortgage to refinance his home loan.

9. The refinance was to lower the interest rate he paid on his home loan.

10. Filo Mortgage arranged the transaction and charged a fee of $3,765.56 for doing so.

11. Filo Mortgage arranged for Reltco to conduct the closing.

12. Filo Mortgage arranged for UWM to be the lender for the refinanced loan.

13. After receiving Plaintiff's application, UWM was responsible for ensuring that Plaintiff was provided the initial disclosures with the good faith estimates required by the federal Truth in Lending Act ("TILA") within three business days.

14. No such estimated disclosures were ever made to Plaintiff.

15. On or before June 1, 2020, Filo Mortgage obtained and used a consumer credit score about Plaintiff in connection with his application for a loan.

16. Filo Mortgage obtained that score from Equifax Mortgage Services or based it on information obtained from that Equifax entity.

17. Filo Mortgage did not provide Plaintiff with the information in writing required by 15 U.S.C. § 1681g(g) about his credit score until the closing was arranged.

18. By closing, it was too late for Plaintiff to use the information in that notice to see if he could have obtained a better loan rate by addressing the information in that notice.

19. Plaintiff would have inquired as to how to obtain a better loan rate by addressing the information in that notice if the notice had been provided soon after it had been used by Filo Mortgage.

20. When the loan was all arranged, by email on July 13, 2020, Filo Mortgage informed Plaintiff the loan was ready to close and that it would arrange the closing.

21. Regarding the person who would do the closing, Filo Mortgage stated in that email "we have a certified team of notaries that will come out to the home."

22. As a loan broker, Filo Mortgage places all, or the vast majority, of its Virginia clients with loans through UWM.

23. As a loan broker, Filo Mortgage arranges for all, or the vast majority, of its clients

in Virginia to use Reltco as the settlement agent.

24. Filo Mortgage never provided Plaintiff with a real choice of who the settlement agent would be.

25. Instead, Filo Mortgage knew it would use Reltco pursuant to an existing understanding that such business would be referred to Reltco.

26. Filo Mortgage referred the closing services to Reltco pursuant to that understanding.

27. As part of that understanding and for that referral, Reltco and Filo Mortgage each knew that they would receive unearned value in the transaction.

28. As the closing agent, Reltco charged closing costs and fees of $975.00.

29. Reltco also charged a $150.00 "subordination fee" and asserted that it was sent to Tower Federal Credit Union.

30. This fee was unnecessary because the refinancing of this home loan qualified under Virginia Code § 55.1-319 to the same priority as the loan it was refinancing.

31. Filo Mortgage knew this fee was unnecessary.

32. No bona fide service was provided for this fee.

33. The Defendants included this unnecessary fee as part of their normal understanding that money would be charged to consumers in settlements that Filo Mortgage referred to Reltco and that such fees would not be questioned.

34. To complete the closing, Reltco arranged for a notary to bring the final documents to Plaintiff to sign.

35. The final Closing Disclosure states that at closing Plaintiff was to receive $2,000.00.

36. A true and accurate copy of the Closing Disclosure is provided as Exhibit A.

37. Among the many other documents that Defendants prepared for the closing was also a FINAL ALTA Settlement Statement, and this also stated that Plaintiff was to receive $2,000.00 at closing.

38. A true and accurate copy of the FINAL ALTA Settlement Statement is provided as Exhibit B.

39. In reliance on what he was told, Plaintiff did not bring any funds to the closing.

40. At closing, he was told that the funds due him on the documents would be mailed to him much later.

41. Plaintiff signed all the documents he was required to sign at closing.

42. The documents included a Note for $301,245.00 payable to UWM and a Deed of Trust on his residence that secured that Note.

43. This loan was at a lower interest rate than Plaintiff's prior home loan and the first payment was due September 1, 2020.

44. Reltco received $301,245.00 from UWM as part of the closing.

45. Reltco received these funds on Plaintiff's behalf in a fiduciary capacity.

46. Reltco was to use these funds to pay Plaintiff's prior lender and was to record the Deed of Trust.

47. Reltco was required to disburse these funds and record the Deed of Trust within two business days.

48. The two-business day requirement is established by Va. Code § 55.1-903.

49. Even accounting for Plaintiff's three day right to cancel the transaction, Reltco did not disburse these funds within two business days of the closing.

50. Similarly, Reltco did not record the Deed of Trust within the required two business days.

51. Plaintiff reasonably assumed that Reltco had performed its duties and thought his prior loan had been paid off.

52. Plaintiff did not expect that he would owe any more payments on his old loan.

53. Plaintiff reasonably assumed that his next home loan payment would not be due until September 1, 2020, when the first payment was due on his new loan.

54. Reltco intentionally did not disburse the funds or record the Deed of Trust.

55. Filo Mortgage knew that Reltco did not perform its duties.

56. From before it presented the closing documents to Plaintiff to sign, Reltco knew that the documents had an error of several thousand dollars.

57. Carrie Gola, a loan closer for Reltco, identified the error before the documents were presented to Plaintiff.

58. Despite knowing the documents were wrong, Reltco sent a notary to Plaintiff's home to present them to Plaintiff to sign.

59. Despite knowing the documents were wrong, Reltco did not inform Plaintiff they were wrong.

60. From the day of closing, Filo Mortgage was also informed the documents were wrong.

61. Despite knowing the documents were wrong, Filo Mortgage did not inform Plaintiff that the documents were wrong.

62. Based on their understanding that Filo Mortgage would continue to refer business to Reltco and that Reltco would continue to act as settlement agent despite the presence of

unnecessary fees and errors in the closing documents, Filo Mortgage and Reltco did not inform Plaintiff that his old loan had not been paid.

63. Because Plaintiff had no idea any problem existed, he did not exercise his right to cancel this home loan refinancing within the three day period allowed by federal law.

64. Reltco did not disburse funds and record the Deed of Trust for several months.

65. In that time period, Plaintiff continued to accrue interest on his prior home loan, continued to be required to pay that loan or have his credit harmed, and also was being charged interest on his new loan.

66. Plaintiff did not find out about the problem until the end of August when he noticed that his prior lender had auto-drafted a home loan payment from his bank account in August.

67. Plaintiff was not expecting this auto-draft to occur and was upset to find out that he had less money in his bank account than he thought he had.

68. Plaintiff contacted his prior lender to find out why it was auto-drafting for a loan that should have been paid the previous month.

69. Plaintiff was shocked and dismayed to learn that his prior lender had never been paid and that it knew nothing about the refinancing that had occurred.

70. By then, more than six weeks had passed since closing.

71. In those six weeks, both Filo Mortgage and Reltco were aware that the funds had not been disbursed.

72. Filo Mortgage and Reltco each knew that the failure to disburse the loan proceeds would mean that Plaintiff would have to keep making payments on his prior loan.

73. For their own benefit, Filo Mortgage and Reltco each decided to withhold from Plaintiff the fact that the proceeds had not been disbursed.

74. Starting on August 31, 2020, Plaintiff began his efforts to solve the problem.

75. Plaintiff works a high stress and demanding job at the Federal Reserve Board.

76. Because of his position, he is concerned that negative information on his credit report would negatively affect his employment.

77. He thus was very concerned about quickly solving this problem.

78. He began a process of many emails and phone calls to Filo Mortgage, Reltco, and UWM.

79. He was very distressed to learn that in September the new lender expected to be paid the first payment; at the same time he also had to continue paying his old lender who had never been paid and who auto-drafted September's payment from his account.

80. Despite involving executive officers of both Filo Mortgage and Reltco in the situation, he could not get the situation resolved quickly.

81. His efforts to resolve the basic situation of having to pay on both loans stretched on for several weeks.

82. In those weeks he lost considerable time from both his work and from his family because of all the time that he spent attempting to resolve this double-pay situation.

83. Eventually, approximately two months after the closing, Reltco disbursed the money to pay the prior lender.

84. Plaintiff was never sent the funds that the closing documents state he was to receive.

85. No one should ever be knowingly presented closing documents with errors on them.

86. No mortgage broker or settlement agent should ever conceal from a consumer that loan funds would not be disbursed after closing.

87. Additionally, on page 2 of Exhibit A, the closing documents reference a credit of

$379.95 which is "for increase in Closing Costs above legal limits."

88. This credit does not identify which closing costs exceeded which legal limit, nor who paid this credit.

89. On page 3 of Exhibit A, the closing documents reference a "Principal Reduction" of $1,176.28 under the "Payoffs and Payments" section.

90. This payment does not identify who was paid this money or why.

91. The $379.95 and the $1,176.28 were split between Defendants or others in ways known only to them.

92. Reltco sent a notary to have Plaintiff sign closing documents that it knew were wrong because Reltco was not acting as an independent settlement agent and was not performing bona fide services; instead it was just following the directions from Filo Mortgage and others that it knew were wrong.

93. Despite the passage of weeks, the reason that Defendants did not inform Plaintiff about how the loan funds were not being disbursed was because Defendants have a standard practice of working with each other and Defendants place that working together in front of their actual duties to consumers.

94. If Reltco and Filo Mortgage had been providing bona fide settlement services, both of them would have notified Plaintiff that the loan funds were not being disbursed.

95. Thus, pursuant to their understanding by which Filo Mortgage refers UWM business to Reltco, the Defendants charged fees to consumers like Plaintiff for Filo Mortgage and Reltco even though neither is performing bona fide duties for those consumers.

**COUNT ONE: VIOLATION OF RESPA**
**(Against all Defendants)**

96. Plaintiff realleges and incorporates all other factual allegations set forth in the

Complaint.

97. In violation of 12 U.S.C. § 2607(a), the Defendants had an understanding where value was exchanged for Filo Mortgage to refer the UWM loans it arranged to Reltco for closing.

98. As shown by Plaintiff's transaction, this understanding included that Reltco would do what it was told regarding closing loans even if the settlement documents had known errors in them.

99. Pursuant to that understanding, Reltco knew it could place unnecessary and unexplained fees on the closing documents and direct who would actually receive the benefit of those fees.

100. This understanding also included that Reltco would close loans with known errors and the Defendants would then work together after the fact to address the situation.

101. Because of this understanding, neither Reltco nor Filo Mortgage informed Plaintiff that the settlement documents had errors and that the loan proceeds had not been disbursed.

102. In violation of 12 U.S.C. § 2607(b), the Defendants assessed charges in this transaction other than for necessary services actually performed.

103. Defendants then arranged for those charges to be split between them or others.

104. Additionally, Defendants did not perform the services that were charged on Exhibit A in multiple ways, including but not limited to Filo Mortgage not performing its duty as loan broker, the Deed of Trust not being recorded until long after Plaintiff complained, and all the charges related to filing the Deed of Trust not being paid shortly after closing.

105. Pursuant to 12 U.S.C. § 2607(d), Plaintiff is allowed to recover three times the amount of settlement charges paid for services that violated these provisions, and also recover his reasonable attorneys' fees.

## COUNT TWO: FRAUD
### (Against Reltco)

106. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

107. Reltco knew the loan documents had errors in them before presenting them to Plaintiff to sign, and did not disclose to Plaintiff they were in error.

108. The fact that the documents contained errors was a material fact which Reltco knowingly concealed from Plaintiff.

109. Reltco represented these documents as final, as if it would disburse according to them, so that Plaintiff would sign them, believe the loan was closed, and not exercise his right to cancel the transaction within three days.

110. Plaintiff relied on Reltco's representations and signed the documents and believed the loan proceeds would be disbursed.

111. Reltco also owed fiduciary duties regarding the loan proceeds it accepted on Plaintiff's behalf.

112. Reltco's fiduciary duties included both properly disbursing the loan and also informing Plaintiff when it decided not to disburse the loan immediately.

113. Plaintiff relied on Reltco to properly disburse the loan after receiving those proceeds and, because of Reltco's silence, he had no reason to suspect it had not been disbursed.

114. Plaintiff was harmed by his reliance on Reltco's affirmative misrepresentations and concealments and can recover his actual damages.

115. Additionally, Reltco's actions were intentional or in such reckless disregard of Plaintiff's rights that Reltco should be assessed punitive damages in the maximum amount allowed by law.

## COUNT THREE: FAIR CREDIT REPORTING ACT - 15 U.S.C. § 1681g(g)
### (Against Filo Mortgage)

116. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

117. Filo Mortgage violated 15 U.S.C. § 1681g(g) because it arranges home loans and used a credit score to do so, but did not provide the required notice in writing in a timely manner.

118. Instead of providing that document as soon as reasonably practicable, it provided the document as part of the closing.

119. This was part of Filo Mortgage's normal practice for when it would provide this notice in writing.

120. By the time of closing, that written document can no longer serve the purpose for which Congress created the 15 U.S.C. § 1681g(g) notice requirement.

121. Plaintiff was harmed by not receiving the information at the required time because he no longer had the ability to use the notice during the application phase to understand more about the rate he was being charged and to determine whether he could actually obtain a better rate.

122. If Plaintiff had this notice prior to closing he would have investigated the information in it to see if was entitled to receive a better rate.

123. This violation was willful, rendering Filo Mortgage liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, which entitles Plaintiff to recovery of his actual damages under 15 U.S.C. §1681o. Plaintiff is also entitled to recover his costs and reasonable attorneys' fees, whether under 15 U.S.C. § 1681n or §1681o.

## COUNT FOUR: VIOLATION OF VIRGINIA CODE § 55.1-903
### (Against Reltco)

124. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

125. Pursuant to Va. Code § 55.1-903, Reltco was to disburse the loan proceeds and record the Deed of Trust within two business days of closing.

126. Reltco did not comply with this requirement.

127. Reltco waited almost two months to do so.

128. Pursuant to Va. Code § 55.1-907, Plaintiff is entitled to recover his actual damages caused by that delay, plus twice the interest he was charged on that loan during this time, and also his reasonable attorneys' fees.

## COUNT FIVE: VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT
**(Against Reltco and Filo Mortgage)**

129. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

130. Both Reltco and Filo Mortgage were suppliers in a consumer transaction regulated by the Virginia Consumer Protection Act.

131. These Defendants violated Va. Code 59.1-200(A)(14)'s prohibition against using a deceptive practice in a consumer transaction.

132. The deceptive practice was not informing Plaintiff that the loan closing documents had errors, and then not informing Plaintiff that the loan had not been disbursed.

133. Plaintiff suffered a loss as a result of these violations.

134. Plaintiff is entitled to recover up to treble his actual damages or at minimum $1,000.00 for each violation, and if not found to be willful, then he may recover his actual damages or at minimum $500.00, pursuant to Va. Code 59.1-204(A); Plaintiff may also recover

his reasonable attorneys' fees and court costs under Va. Code 59.1-204(B).

## COUNT SIX: VIOLATION OF TILA - 15 U.S.C. § 1638
### (Against UWM)

135. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

136. UWM violated the TILA by not providing good faith estimates of any of the disclosures required by 15 U.S.C. § 1638(a).

137. Although such disclosures could have been provided by Filo Mortgage shortly after the application, and although such disclosures are normally presented along with the notice required by 15 U.S.C. § 1681g(g), in this case, none were provided.

138. Because UWM is the creditor in the transaction, as that term is defined in 15 U.S.C. § 1602(g), UWM is the party liable under 15 U.S.C. § 1640(a) for the failure to have these disclosures delivered.

139. In this transaction, delivery of accurate estimates to Plaintiff could have helped avoid the problem of the errors on the final disclosures.

140. Without these disclosures, Plaintiff cannot even determine the source of the $379.95 credit for the increase in closing costs shown on the final settlement statement, which is to be calculated by comparison to the initial estimates.

141. Thus, the failure to deliver these estimates caused concrete harm to Plaintiff by denying him the information he could have used to protect himself in the transaction and to understand how the fees were actually being split.

142. Pursuant to 15 U.S.C. § 1640(a), Plaintiff is allowed to recover his actual damages, $4,000.00 in statutory damages, and his reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Court award the Plaintiff the damages as stated above and such other and further relief that the Court deems appropriate.

                Respectfully submitted,

                Jeffrey C. Pfeiffer

                */s/Amy L. Austin*
                Amy L. Austin, VSB No. 46579
                **CONSUMER LITIGATION ASSOCIATES, P.C.**
                626 E. Broad Street, Suite 300
                Richmond, VA  23219
                (757) 930-3660 - Telephone
                (757) 930-3662 – Facsimile
                Email:  amyaustin@clalegal.com

                Thomas D. Domonoske, VSB No. 35434
                **CONSUMER LITIGATION ASSOCIATES, P.C.**
                850 W. Market Street, Suite 140
                Harrisonburg, VA  22801
                (540) 442-7706 – Telephone
                Email:  tom@clalegal.com